We'll now move to our final appeal of the morning, United States v. Emmanuel Hart. And we're looking for Ms. Mahan and Ms. Greenwald. And I see you both. And Ms. Mahan, you may begin when you're ready. Thank you. Can you hear me? Yes. Were you saying something? You can begin. Thank you. Go ahead. Thank you. And may it please the court. My name is Amy Mahan and I represent appellate Emmanuel Lewis Hart. This case is an appeal based on the court's denial of Mr. Hart's request to recall two government witnesses, Detective Modica and Agent Yoder in violation of Mr. Hart's Sixth Amendment rights to present a complete defense and to confront the witnesses against him. The testimony of these two witnesses was crucial to Mr. Hart's theory of defense. Mr. Hart's theory of defense was that he did not rob the bank, but instead found the stolen money with a GPS tracking device on the street as he walked between two buses, which we refer to in our papers as the 63rd Street bus and the Halstead bus. The recall of these witnesses would have strongly supported Mr. Hart's defense by providing testimony regarding law enforcement's boarding of the 63rd Street bus, the first bus that Mr. Hart boarded. Ms. Mahan, I wanna ask you a question. Was there anything that happened during the course of the trial after the cross-examination of these two witnesses that was unanticipated in the way of late discovery or in the way of unannounced witnesses, et cetera? In other words, what I'm trying to determine here, what was the specific reason that these witnesses needed to be recalled? And to the extent that the questions weren't asked already on cross-examination, why did these witnesses need to be recalled to either ask the question again, or why couldn't they have been asked during the first time that they were on the witness stand? Absolutely, Your Honor. There are two points there. First, during the course of the trial, it became apparent that Mr. Hart was, that law enforcement actually boarded two separate buses that Mr. Hart sat on. But hold on, let's talk, I wanna talk about during the course of trial, but also during the course of discovery. What changed? In other words, did the government's theory of the case change, did the government's evidence change as to what was anticipated that the government would present during the trial as its theory of the case and its evidence in support of the theory of the case? It seems to me like a pretty straightforward presentation by the government of its evidence. Yes, initially the government's, on the record at trial, the government admitted that they thought that Mr. Hart had only been on a single bus, the Halstead bus, and that the law enforcement officers pursued the GPS tracking device embedded into the stolen money, pursued it directly from the red line to the Halstead bus. It's my understanding that they thought that the bus drove down, the GPS tracker on the Halstead bus drove down 63rd Street and then turned on Halstead. And that was their theory, it was that Mr. Hart had been in possession of the GPS tracker, as he said, on the Halstead bus, all the way down 63rd Street and turned on Halstead. What the government, what Mr. Hart elicited on cross-examination for Detective Monica was that actually, in fact, there had been two buses and that Detective Monica had boarded the first bus and had boarded the first bus and the second bus. And on the first bus, the 63rd Street bus, Detective Monica had got on and got off without identifying the suspect. What Mr. Hart wanted to do here was to bring Detective Monica back and Agent Yoder, because Agent Yoder was in charge of the GPS tracking device that was involved with a more precise pinpointing of the embedded GPS tracker in the money. He wanted to bring them back to specifically ask them questions about their timing of their investigation of that first bus, which was not originally part of the government's initial theory. The government's initial theory was that he had been on the Halstead bus the whole time. And he wanted to present this evidence to question them based on the timing evidence presented by Mr. Theory regarding Mr. Hart's boarding of the Red Line, boarding of the 63rd Street bus, so that he could establish that Agent Yoder was investigating the 63rd Street area at the same time that Mr. Hart sat on that bus. And that Detective Monica boarded the bus, the 63rd Street bus, at the same time as Mr. Hart, and that he was unable to identify Mr. Hart as the suspect with the same characteristics, the money in his pockets, the body language that he saw, that he testified to witnessing on the Halstead bus. The essential point was that Mr. Theory had not yet testified with the predicate information as to when Mr. Hart was on the bus. So Agent Yoder and Detective Monica could not in fact testify as to whether, or he could not ask questions to Detective Yoder, sorry, Detective Monica and Agent Yoder regarding whether or not they were investigating the 63rd Street bus at the same time that Mr. Hart was on the bus as well. Was that information not contained in pretrial discovery? That's what I'm, that's what I'm, are you suggesting that this was somehow trial by ambush, that he didn't have any idea what these agents or officers were gonna testify to before they actually hit the stand and uttered the words? Well, so he was on the bus, but he was not aware, he was not aware of the precise testimony that the governments were gonna, specific testimony that the government was going to make with regards to Detective Monica and Agent Yoder. And on cross-examination, he needed the predicate information from Mr. Theory in order to ask the specific timing information. I don't, the government wasn't actually aware of the fact that there was a, that Mr. Hart boarded, at least this is what the record says. The record says that the government was not aware that Mr. Hart was on the 63rd Street bus at all and that the government, or that the government was going to testify about the 63rd Street first bus. In fact, they didn't, the government didn't ask Detective Monica on direct anything about the 63rd Street bus. That actually came out on cross-examination by Mr. Hart. Ms. Mahan, could I ask you two questions? Yes. One, to what extent was the, I found the stolen money between two buses articulated by Mr. Hart in his defense of trial? And second, what effect on that theory do we find with the presence of his fingerprints on the demand notes for both of the bankruptcies? Yeah, no, absolutely. So the evidence, I mean, Mr. Hart was representing himself per se. And so the, his articulation of the theory is not the same as a trained attorney. However, he does talk about the questions he wants to ask. This is in the record on volume three of the trial record at page 89 and 91. And for what, the questions he wants to ask Detective Monica, he's talking about how he wants to see, like on page nine, for example, he says, if he saw me on the second bus and I looked like the individual that I was on the phone, I'm quite sure my looks did not change from this bus to the next bus. Was this in the debate about recalling the witnesses or in his closing argument to the jury? Yes, this was in his debate. Counsel, excuse me, could you hang on just a second? We may have lost Judge Ripple for a moment. Uh-oh. Judge Ripple, can you hear me? Those, Matt in the courtroom? We can hear you, yes. They're checking, Judge. Judge, it looks like he dropped off. So we're gonna try and get him reconnected. Okay, let's just stop the clock. My apologies to everyone, but we do occasionally have some glitches like this. This happened to me when I was presiding a few weeks ago. So, and when Judge Ripple rejoins us, then we'll go, Ms. Mahan, your answers to those questions. Yeah, absolutely. Thank you for your patience. And I did ask for two minutes of rebuttal, but I think one will be fine. Well, we'll play that. Because we're already there. We'll just imagine that there was a fire alarm that just went off if we were all present in the courtroom, so. They're getting him back in right now. Okay, great, thanks. Thanks, Judge Kirsch. Okay. Judge Ripple, can you hear us? I can hear you now. Okay, we've, as soon as your face dropped off, we stopped the argument. And I'll ask, why don't we go back to two minutes left for Ms. Mahan, and I'll ask her to pick up again regarding how clearly this theory was articulated and the effect of the fingerprints on the demand notes. Go ahead. Thank you. Absolutely. So Mr. Hart argued his theory of defense, albeit imperfectly, when he was asking to recall Agent Yoder and Detective Monica to the stand. And you'll see that in volume three starting at, volume three of the trial transcript, starting at page 89. He did not argue it in his closing argument. While the court did contend that Mr. Hart could argue an inference that he was on the 63rd Street bus, the court acknowledged, as did the prosecution in the trial transcript, that in that same, that there's no testimony that Mr. Hart and Detective Monica were on the bus at the same time. Mr. Hart was therefore unable to persuasively make the argument that he wanted to make that while he sat on the 63rd Street bus, Mr. Detective Monica boarded the bus and did not identify Mr. Hart as the suspect or in possession of the stolen money. And he was unable to argue that while he was on the bus at the same time that Agent Yoder investigated the 60, pulled up behind the 63rd Street bus or investigated the 63rd Street area and was also unable to identify Mr. Hart with the stolen money. And because he was unable to ask these questions, he was unable to persuasively put that in front of the jury in his closing argument. The second thing that I will very briefly touch on since I'm running out of time, in order for this court to overturn the evidentiary exclusion on the grounds of Sixth Amendment violation, it's not that the remaining evidence must be insufficient to support the jury's conclusion. That's Strickler v. Green cited in my papers. It's that taken as a whole, the favorable evidence could put the whole case in a different light to undermine the confidence in the verdict. That's Cone v. Bell cited in our papers. Here, the government's strongest evidence is that in this case was that Mr. Hart was found in possession of the stolen money  If Mr. Hart had been able to provide through the testimony of Detective Monica and Agent Yoder evidence that he had not been in possession of the money the whole time, in other words, that he had found the stolen money, the whole case would have been put in a new light. That theory is very difficult for me to reconcile with his fingerprints on the demand note. Great. And my only point is that the Supreme Court it's not the point that the fingerprint evidence is insufficient to sustain a verdict. It's simply that if this evidence that we saw to be presented to the court would cast the case in a different light, it would undermine the confidence of the verdict. Thank you. Thank you very much, Ms. Mahan. Ms. Greenwald, for the government. Good afternoon, your honors. The cases we cite in our brief, the Seventh Circuit cases provide that the defendant's burden to show that his Sixth Amendment right to compulsory process was violated, is to show no reasonable likelihood that the testimony would have affected the judgment of the trier of fact. Not some different light, not some questioning, which we would submit that isn't even here. Because there were two robberies, of course, with similar notes. The defendant's fingerprints on both robbery notes, the defendant, the CTA records, which the defendant had prior to trial showed that he boarded the CTA within moments of both robberies, that he fit the description of both robbers. And that in the second robbery where he had the tracking device, he followed the exact train, the exact location that the tracking device went, and then ultimately was found in possession of it. So the evidence was absolutely overwhelming. In answer to Dr., to Judge Kirsch's question about a trial by ambush or anything. Judge Kirsch has been getting a tough time on that. I know, with labels. With labels. I think I was thinking about that, the news report where a doctor was appearing in court during an operation or something, but forgive me. In any event, the defendant had the records, the CTA records, and Mr. 30, the CTA custodian of records was on the government's witness list, and this was all before trial. And the confusion wasn't the name of the buses. The government had thought, because we had the records of the 60, it turned out to be the 63rd Street bus, because we had records that defendant boarded one bus after leaving the CTA line, we assumed that that bus traveled along 63rd, because that's where the tracker went and turned on Halstead. Because there was no indication that the defendant, but from his CTA records, had boarded any other bus. So that's why we thought it was one bus. What we learned from the defendant himself, who knew from the day of the robbery, is that he boarded what was the 63rd Street bus with his CTA pass, but gotten off that bus, and then boarded right away, presumably from the tracker evidence, the Halstead Street bus, and that's where we located him. So he had all the records we had, and he knew how many buses he'd been on. But all of that is really an aside to the fact that Judge Alonzo, the district court judge here, played inordinate care, provided inordinate care to this pro se defendant. He spent a long time, as we detailed in our brief, asking this defendant to provide the basis for which he wanted to recall these witnesses. And at no time did the defendant suggest that his theory was that when he was on the 63rd Street bus, which the record shows he was, he didn't have the tracker, and he found it afterward. And I would suggest that the questions he did ask, and of the witnesses, suggests the contrary theory. He asked Agent Lovernick, he tried to ask, it was overruled. The only reason for stopping the 63rd Street bus is that it was getting transmitted with the tracker, right? He spent a long time asking Detective Motika several questions, attempting to establish that the reason that that detective boarded that 63rd Street bus initially was because signals from the tracking device indicated he was aboard that bus. The theory that he was presenting to the court was that there was something going on here because the tracking device was on the 63rd Street bus. That's why Detective Motika boarded it. And yet when he boarded that bus, he didn't pick him out as the robber. And yet when he boarded the Hall Street bus, he did. That was all available for him to make an argument. It was even available if he wanted to, to make the argument that the tracker wasn't on this bus and was on the other bus. He could have made all of that, those arguments, because there was nothing that any of these witnesses that were gonna get him, that was gonna help him here. In fact, Detective Motika had already testified he boarded that bus and he didn't see the defendant. The record showed the defendant apparently was on a 63rd Street bus. And both Agents Voter, I'm mispronouncing his name, and Agent Lovernick both testified. It was Agent Voter that had that special handheld device that could narrow in on the tracker. He was driving the car with Agent Lovernick in it. Any suggestion that he's running down the street with this handheld tracker is just not supported by the record. And both he and Agent Lovernick, well, and Agent Voter in particular testified under oath that he didn't get out with that handheld tracker until he got to the Halstead Street bus. And so there's just no basis in the record to suggest this theory that Agent Voter determined with the handheld tracker that it wasn't on the 63rd Street bus when the defendant was on that bus. This is just, it's just kind of tilting at windmills at this point. And it all kind of goes down the drain when you look at the standard that the defendant has to meet, which is that ultimately materiality, that there's some reasonable likelihood that the testimony would have affected the judgment of the trial effect and that the district court here acted arbitrarily, which again, the record before this court was that the defendant tried to recall nine witnesses, tried to delay the trial to get daily transcripts and offered basically no basis to delay this trial to recall witnesses. So on the basis of the record before the court, we would rely on, unless the court has any other questions, we would rely on our brief and ask that the court affirm the conviction and sentence of this defendant. Ms. Greenwald, can I just ask you one quick question? Of course. The, these were all folks who were called originally as government witnesses, correct? Yes, yes. And so, I mean, different judges manage this sort of question in different ways. Some would, if a defendant wants to basically put on a defense through cross-examination, sometimes you'll run into beyond the scope objections and the judge will say, you can recall in your own case if that's what you want to do. I gather in this case, Mr. Hall was given a fair amount of latitude in his original cross-examinations. He was, Your Honor. I can't say that there was never beyond the scope because I don't recall as I stand here, but what I can say is I don't believe there was any beyond the scope ever. There was minimal if there was any, but if there was any, I certainly don't believe that it went to this area of inquiry. He was allowed recrosses and- A lot of judges would just take the approach, while there's witnesses on the stand, particularly if it's an agent from out of town, let's ask all the questions we have. So- Yes. And I think, again, if there was a beyond the scope and I do not recall there being one, but I'm just reluctant to say there absolutely wasn't one. I don't think he was ever prevented if he could ask a proper question. And he did have shadow counsel who in front of the defendant made it clear that he had power of subpoena, but if he ever did, I feel pretty strongly, it wasn't this kind of area of inquiry and Judge Alonzo definitely gave him leeway. The main problem he ran into was asking appropriate questions, questions that were legally appropriate. And the other problem he ran into, and this is why I can't remember, because there was a lot of objecting, but he really, his main defense was that there was not subject matter jurisdiction here. And he tried to bring it up every way he could turn. Okay. Thank you very much, Ms. Greenwald. Let's see, Ms. Mahan, we had chewed up a fair amount of your time with various ways. So if you'd like a minute of rebuttal, please go ahead. Sure, sure. Thank you. Thank you, Your Honor. The only additional point that I would like to make, and then I'll rest on our papers, the court initially ruled to allow Detective Monica to be recalled and acknowledging that there were not duplicative non-relevant questions that Mr. Hart could ask. Acknowledging the fact that he had additional questions regarding the boarding of the 63rd Street bus that he had not yet asked Detective Monica. It was only when the government re-raised the objection saying that they had communicated with Detective Monica and that Detective Monica was actually in Wisconsin on vacation that the court changed its ruling and decided that Mr. Hart would not be allowed to recall Detective Monica. This is not a legitimate interest recognized by this court or the Supreme Court to be weighed against Mr. Hart's Sixth Amendment right to recall witnesses. And I do also make, I'm out of time. One last sentence, please, if that's okay. The recall of Detective Monica in particular, the analysis wasn't done with Agent Yoder, but it would not have unduly delayed the court. They had told the jury that the court would be scheduled for about a week and Detective Monica had admitted, the prosecution had argued on the record that Detective Monica would return if necessary. So undue delay is not an interest, a relevant interest here in this analysis. Thank you. Thank you very much, Ms. Mahan. Ms. Mahan, you and your firm took this case by court appointment, did you not? Yes, we did. You and your firm have the thanks of the court for the services you've provided your client and the court and our thanks to Ms. Greenwald, who is also well-known to the court, of course. And with thanks then to both counsel, the case is taken under advisement and the court will be in recess. Thank you.